**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

_____

SHANTI NOVAK,                          :          Civil Action No. 10-cv-9694
                                       :
                    Plaintiff,         :
                                       :
              v.                       :
                                       :
WATERFRONT COMMISSION OF NEW           :
YORK HARBOR, SCOTT POLITANO,           :
BRIAN HENNELLY, and KRISTEN            :
BRYLINSKI,                             :
                                       :
                    Defendants.        :
_____       :

_____

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS WATERFRONT COMMISSION OF NEW YORK HARBOR, SCOTT POLITANO, JOHN HENNELLY, AND KRISTEN BRYLINSKI'S MOTION FOR SUMMARY JUDGMENT**
_____

**SAIBER LLC**
18 Columbia Turnpike, Suite 200
Florham Park, New Jersey 07932
(973) 622-3333
Attorneys for Defendants

## TABLE OF CONTENTS

**PAGE**

PRELIMINARY STATEMENT ..............................................................................................1

STATEMENT OF FACTS ...................................................................................................2

ARGUMENT ........................................................................................................................3

I.      STANDARD OF REVIEW.......................................................................................3

II.     NEITHER THE NEW YORK HUMAN RIGHTS LAW NOR THE NEW YORK
        CITY HUMAN RIGHTS LAW APPLY TO THE WATERFRONT
        COMMISSION ........................................................................................................3

III.    PLAINTIFF'S SEX DISCRIMINATION CLAIMS FAIL BECAUSE SHE WAS
        NOT SUBJECTED TO ANY SPECIFIC GENDER-BASED
        DISCRIMINATORY EMPLOYMENT ACTION................................................5

        A.      Plaintiff Cannot Establish A Prima Facie Case of Sex
                Discrimination...............................................................................................6

                1.      Plaintiff Fails to Provide Any Evidence of Discriminatory Action Taken
                        Against Her Because Of Her Sex.................................................7

                2.      Plaintiff Cannot Establish Any Materially Adverse Action Taken
                        By Defendants.............................................................................11

        B.      Plaintiff Cannot Establish That The Legitimate Reasons Offered By
                Defendants Were A Pretext For Discrimination......................................14

IV.     PLAINTIFF'S RETALIATION CLAIM SHOULD BE DISMISSED
        BECAUSE SHE DID NOT SUFFER ANY ADVERSE EMPLOYMENT
        ACTION CAUSALLY RELATED TO THE FILING OF HER DHR
        COMPLAINTS.......................................................................................................15

        A.      None Of The Adverse Employment Actions Alleged By Plaintiff Would Dissuade
                A Reasonable Person From Filing A Discrimination Claim ....................................16

        B.      Plaintiff Cannot Establish Any Causal Connection Between Her Complaints And
                Defendants' Action ...................................................................................19

1.      There Is No Direct Evidence Of Any Retaliation Directed
        Against Plaintiff ........................................................................................19

2.      There Is No Indirect Evidence Of Any Retaliation Directed
        Against Plaintiff ........................................................................................20

C.      Plaintiff Cannot Prove That The Legitimate Reasons Offered By Defendants
        Were A Pretext For Retaliation.................................................................22

V.      PLAINTIFF'S REMAINING COMMON LAW CLAIMS MUST BE
        DISMISSED..............................................................................................22

A.      Plaintiff's Claims For Negligent Supervision And Retention Of An Unfit
        Employee Should Be Dismissed ...............................................................22

B.      Plaintiff's Claim For Intentional Inflictions of Emotional Distress Should
        Be Dismissed .............................................................................................22

1.      Plaintiff Cannot Establish That Any Member Of The Commission
        Engaged In Any Extreme And Outrageous Conduct...................................23

2.      There is No Evidence That Defendants Intended To Cause, or Recklessly
        Disregarded, A Substantial Probability Of Causing Severe Emotional
        Distress......................................................................................................24

C.      Summary Judgment Should Be Granted Dismissing Plaintiff's Claim for Prima
        Facie Tort ..................................................................................................25

CONCLUSION ...........................................................................................................26

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

Antonmarchi v. Consol. Edison Co.,
2008 WL 4444609, at *14 (S.D.N.Y. Sept. 29, 2008)............................................13

Ballard v. Children's Aid Soc'y,
781 F. Supp. 2d 198, 207 (S.D.N.Y. 2011)....................................................15, 22

Baron v. Port Auth. of New York and New Jersey,
968 F. Supp. 924, 929 (S.D.N.Y. 1997)............................................................4

Bermudez v. City of New York,
783 F. Supp. 2d 560, 577 (S.D.N.Y. 2011)......................................................11

Bouchard v. New York Archdiocese,
710 F. Supp. 2d 255, 260-61 (S.D.N.Y. 2010), appeal dismissed, 458 F. App'x. 37
(2d Cir. 2012)...............................................................................22

Braithwaite v. Kingsboro Psychiatric Ctr.,
2009 WL 2596486 at *6 (E.D.N.Y. Aug. 21, 2009)...............................................13

Brown v. Henderson,
257 F.3d 246, 252 (2d Cir. 2001)................................................................7

Burlington N. & Santa Fe Ry. Co. v. White,
548 U.S. 53, 67 (2006).......................................................................16, 17

Burns Jackson Miller Summit & Spitzer v. Lindner,
59 N.Y.2d 314, 332 (1983)......................................................................25

Celotex Corp. v. Catrett,
477 U.S. 317, 322 (1986), cert. denied, 484 U.S. 1066 (1988) ................................3

Chan v. NYU Downtown Hosp.,
2006 WL 345853 at *5-6 (S.D.N.Y. Feb. 14, 2006)..............................................7

Conboy v. AT&T Corp.,
241 F.3d 242, 258 (2d Cir. 2001)...............................................................23

Copantitla v. Fiskardo Estiatorio, Inc.
788 F. Supp. 2d 253, 294-95 (S.D.N.Y. 2011) ................................................6

Cramer v. Fedco Auto. Components Co.,
2005 WL 839671 at *9, 11 (W.D.N.Y. Apr. 12, 2005) .........................................13

Dean v. Westchester Cnty. Dist. Attorney's Office,
    119 F. Supp. 2d 424, 430 (S.D.N.Y. 2000)..........................................................7

DeCintio v. Westchester County Medical Center,
    807 F.2d 304, 308 (2d Cir. 1986)..................................................................8, 9

Dezaio v. Port Auth. of New York and New Jersey,
    205 F.3d 62, 65 (2d Cir.), cert. denied 121 S. Ct. 56 (2000) ......................4

Fattoruso v. Hilton Grand Vacations Co., LLC,
    2012 WL 2102394, at *5 (S.D.N.Y June 11, 2012).....................................10

Fella v. Cnty. of Rockland,
    297 A.D. 813, 747 N.Y.S. 2d 588 (2d Dep't. 2002)......................................9

Galabya v. N.Y.C. Bd. of Educ.,
    202 F.3d 636, 640 (2d Cir. 2000)...............................................................11

Gelin v. Geithner,
    2009 WL 804144 at *12 (S.D.N.Y. Mar. 26, 2009), aff'd, 376 Fed. App'x. 127 (2d
    Cir. 2010) ....................................................................................................13

Gordon v. New York City Bd. of Educ.,
    232 F.3d 111, 117 (2d Cir. 2000).................................................................19

Gorman-Bakos v. Cornell Coop. Extension,
    252 F.3d 545, 554 (2d Cir. 2001).................................................................20

Grisanti v. Cioffi,
    38 Fed. App'x. 653, 656 (2d Cir. 2002)......................................................24

Hanna v. New York Hotel Trades Council,
    18 Misc. 3d 437, 851 N.Y.S. 2d. 818, 825 (N.Y. Sup. Ct. 2007) ..............11

Harrington v. Pinkerton's Inc.,
    39 Fed. App'x. 655, 656 (2d Cir. 2002)......................................................24

Hess v. Port Auth. Trans-Hudson Corp.,
    513 U.S. 30, 42 (1994)..................................................................................3

Howell v. New York Post Co.,
    81 N.Y.2d 115, 122 (1993)..........................................................................24

Hussein v. Hotel Employees & Restaurant Union, Local 6,
    108 F. Supp. 2d 360, 367 (S.D.N.Y. 2000)................................................21

In re World Trade Ctr. Bombing Litig.,
    17 N.Y.3d 428, 432-33, 957 N.E.2d 733, 735 (2011) ..................................5

Kahn v. Objective Solutions Intl.,
   86 F. Supp. 2d 377 (S.D.N.Y. 2000)........................................................................9

Karoon v. New York City Transit Auth.,
   659 N.Y.S 2d 27, 29 (1st Dep't. 1997)...................................................................22

Kessler v. Westchester Cty. Dept. of Soc. Servs.,
   461 F.3d 199, 205-06 (2d Cir. 2006) .....................................................................15

King v. Port Auth. of New York and New Jersey,
   909 F. Supp. 938, 945 (D.N.J. 1995), aff'd, 106 F.3d 385 (3d Cir. 1996) ..............5

Leibovitz v. N.Y. City Transit Auth.,
   252 F.3d 179, 189 (2d Cir. 2001)............................................................................7

Leibowitz v. Cornell Univ.,
   584 F.3d 487, 498 (2d Cir. 2009)............................................................................6

Ludwig v. Rochester Psych. Ctr.,
   550 F. Supp. 2d 394, 399-400 (W.D.N.Y. 2008)...................................................19

Mack v. Port Auth. of New York & New Jersey,
   225 F. Supp. 2d 376, 391 (S.D.N.Y. 2002)..............................................................4

Malverty v. Waterfront Comm'n of New York Harbor,
   71 N.Y.2d 977, 979, 529 N.Y.S.2d 67 (1988) .....................................................3, 5

Margrabe v. Sexter & Warmflash, P.C.,
   353 Fed. App'x. 547, 550 (2d Cir. 2009)...............................................................24

Mastrototaro v. Consolidated Edison Co. of N.Y., Inc.,
   1990 WL 47709 at *2 n.2 (S.D.N.Y. April 12, 1990) .............................................9

Mauro v. Orville,
   697 N.Y.S.2d 704 (App. Div. 3d Dep't. 1999)...................................................9, 10

McDonnell Douglas Corp. v. Green,
   411 U.S. 792, 802-05 (1973) ................................................................................15

Meiri v. Dacon,
   759 F.2d 989, 998 (2d Cir. 1985), cert. denied, 474 U.S. 829 (1985) .....................7

Milani v. Int'l Bus. Machines Corp., Inc.,
   322 F. Supp. 2d 434, 456-59 (S.D.N.Y. 2004) aff'd sub nom., Milani v. Int'l Bus.
   Machines Corp., 137 F. App'x. 430 (2d Cir. 2005)..................................................6

Ostrowski v. Atl. Mut. Ins. Co.,
   968 F.2d 171, 182 (2d Cir. 1992)............................................................................8

Pacheco v. New York Presbyterian Hosp.,
    593 F. Supp. 2d 599, 629 (S.D.N.Y. 2009)...........................................................16

Patrolmen's Benevolent Assoc. v. City of N.Y.,
    310 F.3d 43, 51 (2d Cir. 2002)...............................................................................11

Perks v. Town of Huntington,
    251 F. Supp. 2d 1143, 1157 n.13 (E.D.N.Y. 2003) ..............................................10

Ponticelli v. Zurich American Ins. Group,
    16 F. Supp. 2d 414, 436 (S.D.N.Y. 1998)..............................................................21

Reed v. A.W. Lawrence & Co.,
    95 F.3d 1170, 1177 (2d Cir. 1996)...........................................................................5

Reeves v. Sanderson Plumbing Products, Inc.,
    530 U.S. 133, 143 (2000).......................................................................................14

Rivera v. Potter,
    2005 WL 236490, at *6 (S.D.N.Y. Jan. 31, 2005).................................................13

Rose v. Port Auth. of New York and New Jersey,
    13 F. Supp. 2d 516, 523-24 (S.D.N.Y. 1998) ......................................................4, 5

Sadowy v. Sony Corp. of Am.,
    496 F. Supp. 1071, 1075 (S.D.N.Y. 1980)............................................................25

Settecase v. Port Auth. of New York & New Jersey,
    13 F. Supp. 2d 530, 535-36 (S.D.N.Y. 1998) .........................................................4

Sharpe v. Utica Mut. Ins. Co.,
    756 F. Supp. 2d 230, 244 (N.D.N.Y. 2010)...........................................................17

St. Mary's Honor Center v. Hicks,
    509 U.S. 502, 511 (1993).......................................................................................14

Staff v. Pall Corp.,
    233 F. Supp. 2d 516, 532-33 (S.D.N.Y. 2002) ......................................................13

Stoddard v. Eastman Kodak Co.,
    309 Fed. App'x. 475, 478-79 (2d Cir. 2009) .........................................................12

Sulehria v. City of New York,
    670 F. Supp. 2d 288 (S.D.N.Y. 2009)....................................................................19

Terry v. Ashcroft,
    336 F.3d 128, 141 (2d Cir. 2010)...........................................................................14

Texas Dep't of Cmty. Affairs v. Burdine,
    450 U.S. 248, 252-53 (1981) ................................................................... passim

Vergara v. Bentsen,
    868 F. Supp. 581, 589 (S.D.N.Y. 1994).................................................................3

Walder v. White Plains Bd. of Educ.,
    2010 WL 3724464 (S.D.N.Y. Sept. 24, 2010).......................................................12

Williams v. N.Y.C. Hous. Auth.,
    335 Fed. App'x. 108, 110 (2d Cir. 2009)..............................................................12

Witkowich v. Holder,
    2010 WL 1328364 at *3 (S.D.N.Y. March 31, 2010) ...........................................17

**STATUTES**

42 U.S.C. § 2000e-2(a)(1)....................................................................................6

Title VII of the Civil Rights Act of 1964............................................................... passim

New York State Executive Law §290, et seq.. ...........................................................4

Chapter I, Title 8 of the Administrative Code of
    the City of New York, § 8-107(1)(a) .....................................................................4

**OTHER AUTHORITIES**

Fed. R. Civ. P. 56 (a) .........................................................................................1

Federal Rule of Civil Procedure 56(c) ....................................................................3

Rule 12(b)(6)................................................................................................23, 24

Rule 56.1 .......................................................................................................2

## <u>PRELIMINARY STATEMENT</u>

Defendants, the Waterfront Commission of New York Harbor (the "Waterfront Commission"), Captain Scott Politano, Chief John Hennelly,[1] and Sergeant Kristen Brylinski (collectively, "Defendants"), submit this Memorandum of Law in support of their Motion for Summary Judgment, pursuant to Fed. R. Civ. P. 56 (a).

The Waterfront Commission is a bi-state agency that was created to investigate and combat criminal activity and influence in the Port of New York and New Jersey.  Plaintiff Shanti Novak ("Plaintiff" or "Novak") is currently employed as a Detective in the Police Division of the Waterfront Commission.  Chief Hennelly and Sgt. Brylinski also are currently employed in the Police Division of the Waterfront Commission.  Capt. Politano retired from the Police Division in 2011.

Plaintiff alleges that, after she ended her romantic relationship with Capt. Politano, she was discriminated against in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), the New York State Human Rights Law, ("NYSHRL"), and the New York City Human Rights Law ("NYCHRL").  Plaintiff also alleges that she was retaliated against following the filing of two separate complaints in the New York Division of Human Rights ("DHR") in violation of the NYSHRL and NYCHRL.  Plaintiff is not seeking <u>any</u> damages for economic loss (indeed, there are none), but seeks damages for emotional distress.

As an initial matter, Plaintiff's claims under the NYSHRL and NYCHRL must be dismissed because they do not apply to the Waterfront Commission, which is a bi-state agency. To the extent the Court determines that these statutes apply, Plaintiff's discrimination claim fails because (a) a failed personal relationship does not form the basis of a sex discrimination claim;

---

[1] Improperly named in the Complaint as "Brian Hennelly".

and (b) Plaintiff cannot prove that Defendants took any materially adverse action against her. Further still, she cannot offer any evidence of pretext to dispute that any of the Waterfront Commission's actions were based on legitimate, non-discriminatory reasons.

Likewise, Plaintiff cannot prove her retaliation claims because none of the actions allegedly taken by Defendants would have dissuaded a reasonable worker from making or supporting a charge of discrimination.  In addition, Plaintiff cannot present any evidence of a causal connection between the allegedly retaliatory actions and her protected activity.  Plaintiff also cannot set forth any evidence of pretext to dispute the Defendants' legitimate, non-retaliatory reasons for any purported "adverse" actions.

Finally, Plaintiff alleges a slew of common law claims that also must be dismissed.  First, Plaintiff's claims of negligent supervision and negligent retention of an unfit employee should be dismissed because all conduct that she complains of took place within the scope of the individual defendants' employment.  Second, Plaintiff's claim for intentional infliction of emotional distress fails because Plaintiff cannot present any evidence that extreme or outrageous conduct took place; nor is there any evidence of intentional or reckless behavior directed towards her. Third, Plaintiff fails to satisfy the threshold of a *prima facie* tort claim because she has not proved, nor even alleged, special damages.

For these reasons, and those set forth herein, Defendants respectfully request that their motion for summary judgment be granted in their favor and that Plaintiff's Complaint be dismissed in its entirety.

## STATEMENT OF FACTS

Defendants incorporate by reference the facts set forth in their Rule 56.1 Statement of Undisputed Material Facts, submitted herewith.

## ARGUMENT

### POINT I

### STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(c) provides that summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986), cert. denied, 484 U.S. 1066 (1988). In the employment discrimination context, a court must inquire as to whether "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party … and grant summary judgment where the nonmovant's evidence is merely colorable, conclusory, speculative or not significantly probative." Vergara v. Bentsen, 868 F. Supp. 581, 589 (S.D.N.Y. 1994). Here, there is insufficient evidence from which a jury can return a verdict in Plaintiff's favor.

### POINT II

### NEITHER THE NEW YORK STATE HUMAN RIGHTS LAW NOR THE NEW YORK CITY HUMAN RIGHTS LAW APPLY TO THE WATERFRONT COMMISSION

The Waterfront Commission is a bi-state agency that was established by the enactment of the Interstate Compact between New York and Jersey and approved by Congress. See Malverty v. Waterfront Comm'n of New York Harbor, 71 N.Y.2d 977, 979, 529 N.Y.S.2d 67 (1988). As a bi-state agency, the Waterfront Commission is not subject to the unilateral laws of one state. Hess v. Port Auth. Trans-Hudson Corp., 513 U.S. 30, 42 (1994) ("[b]i-state entities created by compact…are not subject to the unilateral control of any one of the States that compose the federal system"). For one state's statute to apply to a bi-state agency, that statute must expressly state its intention to apply to the bi-state agency. Malverty, 71 N.Y.2d at 980 (holding the

Commission was not subject to New York State statute because the New York Legislature did not "expressly state[ ] that [the statute] was amending a certain portion of the 'Compact' and that the new law would take effect upon the enactment into law by New Jersey of legislation having an effect identical to New York's legislation").

Courts have consistently held that the NYSHRL, New York State Executive Law §290, et seq., and NYCHRL, Chapter I, Title 8 of the Administrative Code of the City of New York, § 8-107(1)(a), do not apply to bi-state agencies.  See Dezaio v. Port Auth. of New York and New Jersey, 205 F.3d 62, 65 (2d Cir. 2000) (refusing to apply the NYSHRL because "it does not appear that either state legislature intended those laws to amend the provisions of the Compact"), cert. denied 121 S. Ct. 56 (2000); Mack v. Port Auth. of New York & New Jersey, 225 F. Supp. 2d 376, 391 (S.D.N.Y. 2002) (determining that "New York anti-discrimination laws do not apply to the Port Authority because it is a bi-state agency created by compact."); Settecase v. Port Auth. of New York & New Jersey, 13 F. Supp. 2d 530, 535-36 (S.D.N.Y. 1998) (dismissing claims under the NYSHRL and NYCHRL against the Port Authority because those laws do not apply to a bi-state agency); Rose v. Port Auth. of New York and New Jersey, 13 F. Supp. 2d 516, 523-24 (S.D.N.Y. 1998) (dismissing plaintiff's claims under the NYSHRL and NYCHRL because the Port Authority is a "bi-state entity and the HRL contains no reference to the Port Authority"); Baron v. Port Auth. of New York and New Jersey, 968 F. Supp. 924, 929 (S.D.N.Y. 1997) (dismissing plaintiff's claims under the NYSHRL and the New Jersey Law Against Discrimination ("LAD") because, although both New York and New Jersey "evinced the same, or similar, public policy regarding employment opportunities," neither statute "expressly states that they are adding to [Port Authority] responsibilities nor do they even make mention of the bi-state agency.") (quoting Malverty, 71 N.Y.2d at 980) (emphasis in original).

The principles applied in the cases cited herein involving the Port Authority are readily transferable to the Waterfront Commission because both are bi-state agencies created jointly by the legislatures of New York and New Jersey.  In re World Trade Ctr. Bombing Litig., 17 N.Y.3d 428, 432-33, 957 N.E.2d 733, 735 (2011); see also Malverty, 71 N.Y.2d at 979-80. Furthermore, neither the NYSHRL nor the NYCHRL expressly state that it applies to the Waterfront Commission.  See, e.g., Malverty, 71 N.Y.2d at 980; Rose, 13 F. Supp. 2d at 523-24. Moreover, New Jersey has not concurrently adopted the same legislation.  See, e.g., King v. Port Auth. of New York and New Jersey, 909 F. Supp. 938, 945 (D.N.J. 1995) (declining to apply New Jersey's LAD because New York had not concurrently adopted the same legislation), aff'd, 106 F.3d 385 (3d Cir. 1996).  As such, the cases holding that the Port Authority is not subject to state statutes unilaterally enacted by one state -- such as the NYSHRL and the NYCHRL -- apply with equal force to the Waterfront Commission.

Here, therefore, Plaintiff's discrimination and retaliation claims (Second Cause of Action; and Third Cause of Action) pursuant to the NYSHRL and NYCHRL must be dismissed as a matter of law.

## POINT III

### PLAINTIFF'S SEX DISCRIMINATION CLAIMS FAIL BECAUSE SHE WAS NOT SUBJECTED TO ANY SPECIFIC GENDER-BASED DISCRIMINATORY EMPLOYMENT ACTION

Plaintiff's sex discrimination claims must be dismissed because Plaintiff does not set forth any facts that prove she was discriminated against or suffered any adverse employment action because she is a woman.  Instead, the crux of Plaintiff's sex discrimination claims is that she was discriminated against following the breakup of her consensual romantic relationship with Capt. Politano.  Furthermore, even if Plaintiff could identify any discriminatory conduct by

defendants, which she cannot, such conduct does not qualify as sex discrimination under Title VII, the NYSHRL, or the NYCHRL as a matter of law.  For these reasons, the dismissal of Plaintiff's sex discrimination claims is warranted.

**A.**     **Plaintiff Cannot Establish A *Prima Facie* Case of Sex Discrimination**

Title VII prohibits an employer from discriminating against any individual "with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1).  To prove a *prima facie* case of discrimination, plaintiff must demonstrate that:

(1)     she was within a protected group;

(2)     she was qualified for the functions of her position;

(3)     she suffered an adverse employment action; and

(4)     that the action took place under circumstances giving rise to an inference of discrimination.

Leibowitz v. Cornell Univ., 584 F.3d 487, 498 (2d Cir. 2009); see also Copantitla v. Fiskardo Estiatorio, Inc. 788 F. Supp. 2d 253, 294-95 (S.D.N.Y. 2011) (citation omitted) (determining that NYSHRL and NYCHRL claims must be analyzed "according to the same standards that [courts] apply to Title VII discrimination claims"); Milani v. Int'l Bus. Machines Corp., Inc., 322 F. Supp. 2d 434, 456-59 (S.D.N.Y. 2004) aff'd sub nom., Milani v. Int'l Bus. Machines Corp., 137 F. App'x. 430 (2d Cir. 2005) (summary judgment granted dismissing NYCHRL, NYSHRL and Title VII claims after court made consolidated legal analysis of facts, as opposed to a separate analysis for each claim).

Plaintiff has the burden at the outset of "proving by the preponderance of the evidence a *prima facie* case of discrimination."  Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248,

252-53 (1981).  Establishment of a *prima facie* case "in effect creates a presumption that the employer unlawfully discriminated against the employee." Id. at 254.

>    **1.     Plaintiff Fails To Provide Any Evidence Of Discriminatory Action Taken Against Her Because Of Her Sex**

The keystone of a Title VII claim for gender-based discrimination is that "the discrimination must be *because of sex*."  Leibovitz v. N.Y. City Transit Auth., 252 F.3d 179, 189 (2d Cir. 2001) (emphasis in original); Brown v. Henderson, 257 F.3d 246, 252 (2d Cir. 2001) ("It is axiomatic that mistreatment at work . . .  is actionable under Title VII only when it occurs because of an employee's sex, or other protected characteristic.").  Conclusory assertions that other employees were treated more favorably, absent any concrete particulars, are insufficient to maintain a Title VII claim.  Simply stated, Plaintiff must provide evidence that connects her gender to the perceived injustices.  See, *e.g.*, Meiri v. Dacon, 759 F.2d 989, 998 (2d Cir. 1985) ("To allow a party to defeat a motion for summary judgment by offering purely conclusory allegations of discrimination, absent any concrete particulars, would necessitate a trial in all Title VII cases."), cert. denied, 474 U.S. 829 (1985); Chan v. NYU Downtown Hosp., 2006 WL 345853 at *5-6 (S.D.N.Y. Feb. 14, 2006) (conclusory assertions that other employees were treated more favorably are not enough to defeat summary judgment where plaintiff also failed to show she was similarly situated to those employees in terms of job duties and responsibilities); Dean v. Westchester Cnty. Dist. Attorney's Office, 119 F. Supp. 2d 424, 430 (S.D.N.Y. 2000) ("[T]he mere fact that [plaintiff] believed white, male employees similarly situated were not disciplined for similar professional failures is not a sufficient basis to infer discrimination.").

Here, Plaintiff does not argue that she was subject to any specific *gender-based* adverse action; nor does Plaintiff argue any facts from which a *gender-based* motivation for such an adverse action might be inferred.  First, Plaintiff does not contend that any of the defendants

made any remarks that could be fairly viewed as reflecting a gender-based discriminatory animus.  See, *e.g.*, Ostrowski v. Atl. Mut. Ins. Co., 968 F.2d 171, 182 (2d Cir. 1992).  For example, Plaintiff concedes that none of her supervisors made statements that would lead her to believe that she was being removed from an assignment because of her sex.  (Transcript of the Deposition of Shanti Novak Kurschner ["SNK Dep. Tr."], at 125:24-126:8).  Second, Plaintiff has not adduced any discovery, or even made the allegation, that any male employees were given preferential treatment as compared to her.  See, *e.g.*,  Burdine, 450 U.S. at 252 (1981).

Instead, Plaintiff contends that her failed romantic relationship led to an uncomfortable atmosphere in the workplace.  (SNK Dep. Tr. at 90:6-16; 91:24-92:5).  Plaintiff summarily asserts that, because of her failed relationship, she was given unfavorable work assignments, assigned to office duty, and had her name removed from an email regarding a shooting range schedule due to her breakup with Capt. Politano, but has presented no evidence to support these conclusory statements.  (SNK Dep. Tr. at 121:20-23; 172:11-14; 173:14-17).  Importantly, Plaintiff concedes that the only reason that she perceives that she is treated differently from anyone else within the Waterfront Commission is because she and Capt. Politano ended their romantic relationship.  (SNK Dep. Tr. at 91:24-92:8).

Pursuant to applicable case law in this jurisdiction, animus arising from the failure of a consensual romantic relationship does not constitute the basis for a sex discrimination claim. The Second Circuit has held that "voluntary romantic relationships cannot form the basis of a sex discrimination suit under Title VII . . . ."  DeCintio v. Westchester County Medical Center, 807 F.2d 304, 308 (2d Cir. 1986).  In DeCintio, the Second Circuit reversed a district court judgment in favor of seven male plaintiffs who had alleged that they were unfairly disqualified for a

promotion in favor of a supervisor's girlfriend.  Id. at 307-08.  The Court reasoned that "sex" as defined by Title VII did not include romantic relationships.  Id. at 307.

Following the DeCintio decision, the Southern District of New York rejected sex discrimination claims arising from the termination of personal relationships.  In Kahn v. Objective Solutions Intl., 86 F. Supp. 2d 377 (S.D.N.Y. 2000), the plaintiff alleged that she was terminated in violation of Title VII after her married supervisor broke off their consensual sexual affair.  The Court held that "[p]articipation in a consensual office affair does not constitute actionable gender discrimination when the termination of the affair results in discharge.  It may constitute unfair and certainly unchivalrous behavior, but not discrimination because of gender." Id. at 382; see also Mastrototaro v. Consolidated Edison Co. of N.Y., Inc., 1990 WL 47709, at *2 n. 2 (S.D.N.Y. April 12, 1990) ("Plaintiff's allegations centering on a consensual romantic involvement with a married member of Con Edison management do not form the basis for a sex discrimination claim . . . . The prohibitions against sex discrimination address themselves not to discrimination on account of one's sexual relationships, but rather to discrimination based on one's gender in and of itself.").  New York state courts also followed suit.  Mauro v. Orville, 697 N.Y.S.2d 704 (App. Div. 3d Dep't. 1999) (granting summary judgment on plaintiff's claim that she was unfairly terminated following the termination of a sexual affair with her supervisor, reasoning that the statutory term "sex" is synonymous with "gender" and thus does not include concepts like "sexual activity," "sexual liaisons," or "sexual attractions").

Likewise, federal and state courts have not hesitated to dismiss NYSHRL and NYCHRL sex discrimination claims when a plaintiff fails to allege discrimination *because* of his or her *sex*. See Fella v. Cnty. of Rockland, 297 A.D. 813, 747 N.Y.S. 2d 588 (2d Dep't. 2002) ("Under state and federal law, a claim of sex discrimination does not lie where the conduct complained of by

the employee involves an isolated act of preferential treatment of another employee due to a romantic, consensual relationship"); <u>Fattoruso v. Hilton Grand Vacations Co., LLC</u>, 2012 WL 2102394, at *5 (S.D.N.Y June 11, 2012) (claim for gender discrimination under NYCHRL failed because "[n]othing in the Complaint demonstrates that plaintiff was deprived of the same purported advantages as [his co-worker] *because of plaintiff's gender*") (emphasis in original).

This is not a situation where Plaintiff asserts that she was subjected to any unwelcome sexual advances (*i.e.*, *quid pro quo* harassment). And, indeed, there is no evidence in the record of any such incident. <u>See</u> <u>Perks v. Town of Huntington</u>, 251 F. Supp. 2d 1143, 1157 n.13 (E.D.N.Y. 2003) (citation omitted) (a claim for sex discrimination based upon the termination of a consensual relationship is actionable only if the plaintiff can "demonstrate that the employer demanded further sexual relationships before taking the action he did"); <u>Mauro</u>, 697 N.Y.S.2d at 708 (granting summary judgment dismissing Plaintiff's Title VII sexual discrimination claim following a failed romantic relationship in part because "the present record contains no evidence that plaintiff was subjected to any unwelcome sexual conduct following the breakup of the consensual relationship …").

In sum, Plaintiff's sex discrimination claim fails as a matter of both fact and law. First, Plaintiff has failed to present any evidence of any gender-based comments made or actions taken by Defendants to sustain a claim for sex discrimination. Second, Plaintiff's claim of an uncomfortable working situation following her break-up with Capt. Politano does not constitute a sex discrimination claim under either Title VII, the NYSHRL or the NYCHRL. None of the facts, and any reasonable inference that can be drawn therefrom, support a claim for sex discrimination.

2.      **Plaintiff Cannot Establish Any Materially Adverse Action Taken By Defendants**

Even if the Court determines that Plaintiff has presented sufficient evidence of discriminatory conduct because of Plaintiff's sex, none of the conduct is "materially adverse," such that it satisfies the third prong of the *prima facie* case.

The Second Circuit has held that "[t]o constitute an adverse employment action in violation of Title VII, a change in working conditions must be 'materially adverse.'" Patrolmen's Benevolent Assoc. v. City of N.Y., 310 F.3d 43, 51 (2d Cir. 2002) (quoting Galabya v. N.Y.C. Bd. of Educ., 202 F.3d 636, 640 (2d Cir. 2000)), cert. denied, 538 U.S. 1032 (2003). A materially adverse change "must be more disruptive than a mere inconvenience or an alteration of job responsibilities" and "might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices ... unique to a particular situation." Galabya, 202 F.3d at 640 (citations omitted); see also Bermudez v. City of New York, 783 F. Supp. 2d 560, 577 (S.D.N.Y. 2011) ("An adverse employment action under the NYCHRL is defined the same as under the NYSHRL and [Title VII]") (quoting Hanna v. New York Hotel Trades Council, 18 Misc. 3d 437, 851 N.Y.S.2d 818, 825 (N.Y. Sup. Ct. 2007)).

Plaintiff admits she was not terminated, demoted, transferred, lost compensation and benefits, or otherwise suffered a change in her working conditions in a materially adverse manner.  (SNK Dep. Tr. at 143:7-15; 166:18-167:16; 173:25-174:21; 223:19-224:6).  Likewise, Plaintiff does not allege that she lost any wages or vacation time as a result of the allegations contained in her complaint.  (SNK Dep. Tr. at 223:15-224:1).  Plaintiff also concedes that she has not been denied an opportunity for promotion.  (SNK Dep. Tr. at 203:3-8; 203:22-204:5).

In recognition of these undisputed facts, Plaintiff has waived any claim for economic loss.  (SNK Dep. Tr. at 223:15-18; 224:7-12).

None of the other actions described by Plaintiff -- individually or in the aggregate -- constitute a materially adverse action.  For example, despite being absent twenty times in one year and eighteen times in the following year, Plaintiff alleges that her use of sick time was scrutinized and that she was given a Memorandum of Counseling regarding this issue.  (SNK Dep. Tr. at 156:12-15; 158:18-22; Transcript of the Deposition of John Hennelly ["JH Dep. Tr."], attached to the Provost Aff. as Exhibit B, at 75:25-76:1).  This Court has already concluded that similar actions do not rise to the level of being "materially adverse."  See Walder v. White Plains Bd. of Educ., 2010 WL 3724464 (S.D.N.Y. Sept. 24, 2010) (plaintiff's conclusory allegations that she was scrutinized for her sporadic attendance and reprimanded by her supervisors did not amount to "adverse employment actions" because they did not constitute materially adverse changes in the terms, conditions or privileges of her employment); Williams v. N.Y.C. Hous. Auth., 335 Fed. App'x. 108, 110 (2d Cir. 2009) (Defendant's denial of plaintiff's request for a leave of absence, a small reduction in her salary, and the issuance of two counseling memoranda did not constitute an adverse employment action.").

Further, notwithstanding her admission that Sgt. Brylinski does not require her to do anything above and beyond her normal job duties, (SNK Dep. Tr. at 226:5-8), Plaintiff testified that Sgt. Brylinski subjected her to excessive job scrutiny, including requiring Plaintiff to timely submit reports, questioning overtime pay, denying Plaintiff's request to change shifts, and changing Plaintiff's work schedule to include working on a Sunday.  (SNK Dep. Tr. at 224:18-226:4; 250:9-18; 250:22-251:8).  Once again, the Second Circuit has rejected the contention that similar actions constitute materially adverse actions.  See Stoddard v. Eastman Kodak Co., 309

Fed. App'x. 475, 478-79 (2d Cir. 2009) (concluding that plaintiff's claim of excessively harsh criticism by her boss does not constitute adverse employment actions); Braithwaite v. Kingsboro Psychiatric Ctr., 2009 WL 2596486 at *6 (E.D.N.Y. Aug. 21, 2009) (denial of shift transfer does not constitute an adverse employment action); Cramer v. Fedco Auto. Components Co., 2005 WL 839671 at *9, 11 (W.D.N.Y. Apr. 12, 2005) (that defendant "enforced break time and phone usage policies in a discriminatory manner [and] refused to grant [plaintiff] time off on a few occasions" did not constitute adverse employment actions because "[s]uch minor inconveniences, absent some other negative result, are not, as a matter of law, adverse employment actions").

Plaintiff also complains that she received a disproportionate number of 3 p.m. to 11 p.m. shifts, even though she admitted that these shifts were no less desirable than other shifts (SNK Dep. Tr. at 251:9-11; 253:5-9), and that she was given unfavorable work assignments.  (SNK Dep. Tr. at 120:8-11).  The Southern District has repeatedly held that these actions are not "materially adverse."  As to shift changes, see Antonmarchi v. Consol. Edison Co., 2008 WL 4444609, at *14 (S.D.N.Y. Sept. 29, 2008) ("unfavorable hours do not constitute adverse employment action for the purpose of Title VII"); Rivera v. Potter, 2005 WL 236490, at *6 (S.D.N.Y. Jan. 31, 2005) (same).  As to work assignments, see Gelin v. Geithner, 2009 WL 804144 at *12 (S.D.N.Y. Mar. 26, 2009) ("plaintiff's 'subjective dissatisfaction with assignments' simply does not rise to the level of adverse employment action"), aff'd, 376 Fed. App'x. 127 (2d Cir. 2010); Staff v. Pall Corp., 233 F. Supp. 2d 516, 532-33 (S.D.N.Y. 2002) ("The mere fact that an employee has been transferred or that his job responsibilities have changed is not sufficient in itself to show an adverse change in working condition.").

In sum, there are no material facts in dispute regarding whether Plaintiff suffered any adverse employment action.  Even after drawing all inferences in her favor, Plaintiff cannot prove that any adverse employment action was taken against her.

**B.     Plaintiff Cannot Establish That The Legitimate Reasons
              Offered By Defendants Were A Pretext For Discrimination**

If, and only if, Plaintiff is able to establish a prima facie case of discrimination, the burden shifts to the defendant to "produc[e] evidence that the plaintiff was rejected, or someone else was preferred, for a legitimate, nondiscriminatory reason."  Terry v. Ashcroft, 336 F.3d 128, 141 (2d Cir. 2010) (citing Burdine, 450 U.S. at 254) (applying McDonnell-Douglas standard to retaliation claims).  This burden is one of production, not persuasion, and involves no credibility assessment.  See id. at 142.  Once an employer sets forth a legitimate non-discriminatory business reason for its actions, the presumption of discrimination "drops out of the picture." St. Mary's Honor Center v. Hicks, 509 U.S. 502, 511 (1993).  Thereafter, the burden is once again shifted onto the plaintiff, who is "afforded the opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination."  Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 143 (2000) (internal quotations omitted).  The evidence set forth herein confirms that Defendants' legitimate non-discriminatory reasons for their actions were true.  Therefore, Plaintiff will be unable to demonstrate the element of pretext.

## POINT IV

### PLAINTIFF'S RETALIATION CLAIMS SHOULD BE DISMISSED BECAUSE SHE DID NOT SUFFER ANY ADVERSE EMPLOYMENT ACTION CAUSALLY RELATED TO THE FILING OF HER DHR COMPLAINTS

As set forth above, neither the NYSHRL nor the NYCHRL apply to the Waterfront Commission as a bi-state agency.  To the extent that this Court determines that these statutes apply to the Waterfront Commission, summary judgment should still be granted, and both Plaintiff's NYSHRL and NYCHRL retaliation claims should be dismissed.[2]

In order to defeat a motion for summary judgment, a plaintiff must first set forth a *prima facie* case of retaliation providing evidence that:

    (1)    she engaged in a protected activity under the anti-discrimination statutes;

    (2)    that the employer was aware of this activity;

    (3)    that the employer took adverse action against the Plaintiff; and

    (4)    that a causal connection exists between the protected activity and the adverse action, i.e., that a retaliatory motive played a part in the adverse employment action.

Kessler v. Westchester Cty. Dept. of Soc. Servs., 461 F.3d 199, 205-06 (2d Cir. 2006); see also Ballard v. Children's Aid Soc'y, 781 F. Supp. 2d 198, 207 n.3 (S.D.N.Y. 2011) (citing Reed v. A.W. Lawrence & Co., 95 F.3d 1170, 1177 (2d Cir.1996)).  "Retaliation claims under the NYSHRL and NYCHRL are evaluated under the three-step burden-shifting framework set forth in McDonnell Douglas Corp. v. Green. 411 U.S. 792, 802-05 (1973)."

---

[2] Plaintiff has not alleged a retaliation claim under Title VII.  (Memorandum and Order, p. 7, October 17, 2011, Docket No. 24).

A.     **None Of The Adverse Employment Actions Alleged By Plaintiff Would Dissuade A Reasonable Person From Filing A Discrimination Claim**

The purpose of an anti-retaliation provision is to protect individuals from retaliation that "produces an injury or harm."  Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 67 (2006).  As such, in deciding whether a challenged action is "materially adverse," a court must "separate significant from trivial harms."  Id.  To sustain a retaliation claim, plaintiff must prove that the challenged action would have dissuaded a reasonable worker from making or supporting a charge of discrimination.  Id. at 68.

Here, Plaintiff alleges no retaliatory conduct that rises to the level of dissuading a reasonable person from filing a claim of retaliation.  To the contrary, these events amount to nothing more than "petty slights or minor annoyances that often take place at work and that all employees experience" that the United States Supreme Court cautioned against in Burlington.

As set forth above, Plaintiff has not been fired, demoted, or denied a promotion, and has not suffered a loss of title, responsibility or benefits.  (SNK Dep. Tr. at 143:7-15; 166:18-167:16; 173:25-174:21; 203:3-8; 203:22-204:5; 223:15-224:1).  In fact, Plaintiff has abandoned any claim for economic damages.  (SNK Dep. Tr. at 224:7-12).

Recognizing that there has been no materially adverse action taken against her, Plaintiff asserts a laundry list of trivial events -- relating solely to her job performance -- that she alleges occurred in retaliation for her filing complaints in the DHR.  The Southern District of New York, however, has recognized that "constructive criticism of employees is a necessary part of the employee-supervisor relationship and broad, unsubstantiated claims that an employee was criticized by a supervisor, without more, cannot constitute an act that would reasonably deter a person from engaging in protected activity."  Pacheco v. New York Presbyterian Hosp., 593 F. Supp. 2d 599, 629 (S.D.N.Y. 2009) (dismissing plaintiff's retaliation claim based upon his

allegation that his employer criticized his work because there was "no reason to believe that the criticism was unwarranted or that the criticism had any tangible job consequences") (citation omitted); see also Witkowich v. Holder, 2010 WL 1328364, at *3 (S.D.N.Y. March 31, 2010) (concluding that receiving a "letter of instruction" when he refused to answer a direct question by his superior, and receiving other reprimands and criticisms by his supervisors, was insufficient to sustain a retaliation claim under Title VII).  Put simply, "[a]n employee's decision to report discriminatory behavior cannot immunize that employee from those petty slights or minor annoyances that often take place at work and that all employees experience."  Burlington, 548 U.S. at 67.

Taken individually or together, Plaintiff has failed to demonstrate that any of these events is "materially adverse" enough to dissuade a reasonable person from filing a claim.  For example, Plaintiff argues that in retaliation for filing a Complaint in the DHR on December 19, 2008, she received a Memorandum of Counseling because she arrived late to a mandatory training session.  (SNK Dep. Tr. at 152:2-6).   Less than two weeks later, Plaintiff filed a second Complaint in the DHR.  (SNK Dep. Tr. at 221:16-222:8).  Clearly, receiving the Memorandum of Counseling did not dissuade Plaintiff from filing a second Complaint shortly thereafter.  See also Sharpe v. Utica Mut. Ins. Co., 756 F. Supp. 2d 230, 244 (N.D.N.Y. 2010) (rejecting plaintiff's argument that the issuance of a counseling memorandum constituted retaliation where plaintiff made a complaint of retaliation shortly thereafter).

Plaintiff also contends that her immediate supervisor, Sgt. Brylinski, required her to timely submit case management forms to her supervisors -- even though this is one of her job responsibilities that is required of all detectives.  (SNK Dep. Tr. at 178:16-21, 179:3-8).  Sgt. Brylinski did not issue a Memorandum of Counseling to Plaintiff for failing to submit timely

reports.  (SNK Dep. Tr. at 182:12-19).  Plaintiff even admits that there can be no retaliation when she is asked to comply with Waterfront Commission standard operating procedure, such as when Sgt. Brylinski requires her to submit a report on time.  (SNK Dep. Tr. at 191:16-20; 191:22-192:15).  Being expected to do one's job can hardly be considered an action that would dissuade a reasonable person from filing a claim.

Second, Plaintiff contends that she was retaliated against when she received a Memorandum of Counseling in March of 2009 due to her use of sick time.  (SNK Dep. Tr. at 157:5-12).  Yet, Plaintiff admits that she was absent twenty times in 2008 and eighteen times in 2009.  (SNK Dep. Tr. at 158:18-22; JH Dep. Tr. at 75:25-76:22).  Moreover, several other detectives received such counseling regarding their use of sick time due to the implementation of a new policy, and as such, Plaintiff was not singled out from other detectives.  (JH Dep. Tr. at 76:2-9; 77:14-78:3).

In addition, Plaintiff contends that two months after she was counseled for abusing the sick leave policy, Chief Hennelly checked to make sure that Plaintiff was, in fact, home on a day she called out sick.  (SNK Dep. Tr. at 184:14-18).  Nevertheless, Plaintiff admitted that the Waterfront Commission is entitled to enforce the correct use of sick time, such as they did here.  (SNK Dep. Tr. at 183:13-184:5).  Simply put, an employer expecting its employees to abide by its policies, and taking corrective action when they do not, does not rise to the level of producing an injury or harm or anything that would dissuade a reasonable person from making a charge of discrimination.

Plaintiff also claims that Sgt. Brylinski retaliated against her by altering her performance evaluation.  (SNK Dep. Tr. at 195:3-8).  Yet, Sgt. Brylinski testified that _every_ evaluation was

changed after a division-wide training regarding evaluation methodology.  (Transcript of the

Deposition of Kristen Brylinski ["KB Dep. Tr."], at 74:17-75:6).

Because the Waterfront Commission treated both Plaintiff and others in the same manner,

this conduct cannot constitute actionable retaliation.  See Ludwig v. Rochester Psych. Ctr., 550

F. Supp. 2d 394, 399-400 (W.D.N.Y. 2008) (dismissing plaintiff's retaliation claim where, as

here, plaintiff admitted to the infractions for which she was disciplined and offered "no evidence

that other staff members who committed similar policy violations were treated differently");

Sulehria v. City of New York, 670 F. Supp. 2d 288, 315 (S.D.N.Y. 2009) (rejecting retaliation

claim where plaintiff failed to produce any evidence of disparate treatment between other

employees in similar circumstances).

In sum, none of the conduct of which Plaintiff complains rises to the level of "materially

adverse."  Instead, Plaintiff strings together trivial and innocuous events in an attempt to create a

claim where none exists.

## B.   Plaintiff Cannot Establish Any Causal Connection Between Her Complaints And Defendants' Actions

No evidence has been adduced that establishes a causal connection between the filing of

her DHR complaints and the actions complained of.  The Second Circuit has consistently held

that proof of a causal connection can be shown either:  (1) "directly, through evidence of

retaliatory animus directed against the plaintiff by the defendant," or (2) "indirectly, by showing

that the protected activity was followed closely by discriminatory treatment, or through other

circumstantial evidence such as disparate treatment of fellow employees who engaged in similar

conduct."  Gordon v. New York City Bd. of Educ., 232 F.3d 111, 117 (2d Cir. 2000).  Here,

Plaintiff fails on both fronts.

### 1.      There Is No Direct Evidence Of Any Retaliation Directed Against Plaintiff

Plaintiff has failed to present any <u>direct</u> evidence of retaliatory animus directed against her.  Plaintiff cannot identify a single remark or any other conduct by any defendant that connects the actions taken by defendants to the filing of either complaint.  For example, Plaintiff admits that no one at the Waterfront Commission ever told her that she received a Memorandum of Counseling for arriving late at the mandatory training session because she filed a complaint with the Division of Human Rights.  (SNK Dep. Tr. at 153:16-154:2).  Likewise, she was never told that she was counseled for abusing sick leave in retaliation for filing a complaint with the Division of Human Rights.  (SNK Dep. Tr. at 167:22-168:24).  Furthermore, Sgt. Brylinski emphatically denies ever receiving any instruction to treat Plaintiff any differently than usual after Plaintiff filed her DHR Complaint.  (KB Dep. Tr. at 38:2-17; 39:6-10).  Similarly, Capt. Politano testified that no conduct was directed towards Plaintiff in retaliation for filing a complaint with the Division of Human Rights.  (Transcript of the Deposition of Scott Politano ["SP Dep. Tr."], at 77:7-16).  In sum, aside from her personal belief that she was retaliated against, there is no direct evidence of retaliation.

### 2.      There Is No Indirect Evidence Of Any Retaliation Directed Against Plaintiff

In order to establish indirect proof of a causal connection between the protected activity and the alleged retaliatory action, Plaintiff must produce evidence that the retaliation was close in time to the protected activity or that other employees who engaged in similar conduct were treated differently than Plaintiff.  The actions complained of by Plaintiff do not suffice under either standard.

Here, Plaintiff filed complaints in the DHR on December 19, 2008 and January 9, 2008.  Although the Second Circuit "has not drawn a bright line to define the outer limits beyond which

a temporal relationship is too attenuated to establish a causal relationship between the exercise of

a federal constitutional right and an allegedly retaliatory action, <u>Gorman-Bakos v. Cornell Coop.</u>

<u>Extension</u>, 252 F.3d 545, 554 (2d Cir. 2001), some district courts have generally concluded that

"a passage of two months between the protected activity and the adverse employment action

seems to be the dividing line."  <u>See</u> <u>Hussein v. Hotel Employees & Restaurant Union, Local 6</u>,

108 F. Supp. 2d 360, 367 (S.D.N.Y. 2000) ("the passage of more than two months defeats any

retaliatory nexus"); <u>Ponticelli v. Zurich American Ins. Group</u>, 16 F. Supp. 2d 414, 436 (S.D.N.Y.

1998) (two-and-a-half months is "hardly the close proximity of time contemplated … for

allowing a plaintiff to establish the "causal connection" element of retaliation claims").

There are two events within this two-month period following the filing of the DHR

complaint that Plaintiff contends are retaliatory.  First, Plaintiff received a Memorandum of

Counseling on December 23, 2008.  (Memorandum of Counseling, Provost Aff., Exhibit F).

Yet, this written Memorandum of Counseling was issued after Plaintiff admittedly arrived 45

minutes late to a mandatory department-wide training session.  (SNK Dep. Tr. at 132:3-6;

135:25-136:4; 143:16-24).  Furthermore, as Plaintiff herself concedes, her male partner, Det.

Stobinski, also arrived late to the training, and also received a written Memorandum of

Counseling on December 23, 2008.  (SNK Dep. Tr. at 137:16-19; 154:3-6; <u>see</u> <u>also</u>

Memorandum of Counseling, Provost Aff., Exhibit H).  There is no evidence that Det. Stobinski

filed a complaint in the DHR.  Thus, the issuance of the counseling memorandum does not

constitute retaliation.

Plaintiff's receipt of another Memorandum of Counseling in March of 2009, arising out

of her abuse of the sick leave policy, is the second alleged retaliatory act that falls within this

two-month period that is critical to this analysis.  As set forth above, Plaintiff does not dispute

that the Waterfront Commission was within its right to enforce its sick leave policy, and that the issuance of this counseling arose from her abuse of the sick leave policy.  (SNK Dep. Tr. 183:13-15; Memorandum of Counseling, Provost Aff., Exhibit I).  Moreover, there were other detectives who were similarly counseled regarding the sick leave policy.  (JH Dep. Tr. at 76:2-9; 77:14-78:5).  Thus, the action also does not constitute indirect proof of retaliation.

The remaining conduct of which Plaintiff complains is too attenuated in time from her DHR complaints and indeed, spans at least four years.  As such, these remaining events are insufficient, as a matter of law, to constitute retaliatory action under the applicable case law in this jurisdiction.

### C.    Plaintiff Cannot Prove That The Legitimate Reasons Offered By Defendants Were A Pretext for Retaliation

Retaliation claims under the NYSHRL and NYCHRL are also subject to the McDonnell-Douglas burden shifting framework.  Ballard v. Children's Aid Soc'y, 781 F. Supp. 2d 198, 206 (S.D.N.Y. 2011).  Here, as with Plaintiff's sex discrimination claims, the evidence confirms that Defendants' actions were legitimate and non-retaliatory.  As such, Plaintiff will be unable to prove that these reasons were a pretext for retaliation.

### POINT V

### PLAINTIFF'S REMAINING COMMON LAW CLAIMS MUST BE DISMISSED

Plaintiff has also asserted claims for negligent supervision and retention of an unfit employee, intentional infliction of emotional distress, and *prima facie* tort.  There is absolutely no evidence to support any of these causes of action, and therefore, each claim must be dismissed.

**A.**     **Plaintiff's Claims For Negligent Supervision And Retention Of An Unfit Employee Should Be Dismissed**

Plaintiff's claims of negligent supervision and retention against Defendants fail as a matter of law because these claims can only proceed against an employer for an employee acting outside the scope of her employment.  Bouchard v. New York Archdiocese, 710 F. Supp. 2d 255, 260-61 (S.D.N.Y. 2010), appeal dismissed, 458 F. App'x. 37 (2d Cir. 2012); see also Karoon v. New York City Transit Auth., 659 N.Y.S 2d 27, 29 (1st Dep't. 1997) ("no claim may proceed against the employer for negligent hiring or retention" where employee is acting within the scope of his employment).  Here, there is no evidence, or even an allegation, that the individual defendants acted outside the scope of their employment.  To the contrary, all of Plaintiff's complaints in this lawsuit emanate from the workplace.  Accordingly, Plaintiff's claims for negligent supervision and retention are barred as a matter of law.

**B.**     **Plaintiff's Claim for Intentional Infliction Of Emotional Distress Should Be Dismissed**

There are no facts in the record that support Plaintiff's claim for intentional infliction of emotional distress.  "[T]he standard for stating a valid claim of intentional infliction of emotional distress is 'rigorous and difficult to satisfy.'"  Conboy v. AT&T Corp., 241 F.3d 242, 258 (2d Cir. 2001) (quoting Howell v. New York Post Co., 81 N.Y.2d 115, 122 (1993)) (affirming dismissal of claim for intentional infliction of emotional distress where Court concluded that conduct complained of would not rise to the level of "extreme and outrageous," even if true).  In order to prove a claim for intentional infliction of emotional distress, a plaintiff must satisfy all of the following elements:  "(1) extreme and outrageous conduct [by the defendant]; (2) intent to cause, or reckless disregard of a substantial probability of causing severe emotional distress; (3)

a causal connection between the conduct and the injury; and (4) severe emotional distress." Id. Here, there is no evidence to support even one of these requisite elements.

> **1.      Plaintiff Cannot Establish That Any Member Of The Commission Engaged In Any Extreme And Outrageous Conduct**

The New York Court of Appeals has emphasized the extraordinary burden necessary to prove extreme and outrageous conduct: "of the intentional infliction of emotional distress claims considered by this Court, every one has failed because the alleged conduct was not sufficiently outrageous." Howell, 81 N.Y.2d at 122; see also Grisanti v. Cioffi, 38 Fed. App'x. 653, 656 (2d Cir. 2002) (a plaintiff "must establish more than unpleasant or uncomfortable behavior on the part of the defendant and that [m]ere insults and indignities or annoyances that are not extreme or outrageous are not enough"). This standard applies in employment cases. See Harrington v. Pinkerton's Inc., 39 Fed. App'x. 655, 656 (2d Cir. 2002).

The conduct at issue here pales in comparison and can hardly be considered "utterly intolerable in civilized society." Howell, 81 N.Y. 2d at 122. For example, Plaintiff specifically acknowledges that neither she nor her family was never physically threatened. (SNK Dep. Tr. at 268:1-7). At best, Plaintiff complains that she was treated unprofessionally. (SNK Dep. Tr. at 267:7-17). This is far from the extreme conduct required by the courts in this jurisdiction.

> **2.      There Is No Evidence That Defendants Intended To Cause, Or Recklessly Disregarded, A Substantial Probability Of Causing Severe Emotional Distress**

Plaintiff also fails to point to any evidence whatsoever that Defendants intended to cause her severe emotional distress or recklessly disregarded a substantial probability of causing severe emotional distress. "Courts are reluctant to allow recovery under the banner of intentional infliction of emotional distress absent a deliberate and malicious campaign of harassment or intimidation." Margrabe v. Sexter & Warmflash, P.C., 353 Fed. App'x. 547, 550 (2d Cir. 2009)

(affirming dismissal of complaint for failure to state a claim pursuant to Rule 12(b)(6)).  Here, there is absolutely no evidence that Defendants orchestrated such a campaign against Plaintiff.

Even more importantly, Plaintiff has presented no evidence of severe emotional distress. Plaintiff first visited a psychologist in January 2011 -- immediately following the filing of this lawsuit, but years after many of the actions that Plaintiff alleges were either discriminatory or retaliatory.  (SNK Dep. Tr. at 226:25-227-3).  Plaintiff admits that any alleged emotional distress did not interfere with performing her job.  (SNK Dep. Tr. at 290:18-22).  Plaintiff also did not seek any medical help for any alleged physical ailment.  (SNK Dep. Tr. at 236:25-237:8). Likewise, Plaintiff took no medication for any alleged mental ailment.  (SNK Dep. Tr. at 238:25-239:6).  Nor did Plaintiff inform anyone at the Waterfront Commission that she was psychologically unfit to serve as a police officer, as she was required to do in accordance with Waterfront Commission policy.  (SNK Dep. Tr. 287:12-19).  Accordingly, this claim must be dismissed because Plaintiff cannot demonstrate that she suffered severe emotional distress.

### C.     Summary Judgment Should Be Granted Dismissing Plaintiff's Claim For *Prima Facie* Tort

The elements for a cause of action for *prima facie* tort are "(1) intentional infliction of harm, (2) resulting in special damages, (3) without excuse or justification, and (4) by an act or series of acts that would otherwise be lawful."  Burns Jackson Miller Summit & Spitzer v. Lindner, 59 N.Y.2d 314, 332 (1983).  A cause of action for *prima facie* tort cannot be maintained absent allegations "that defendants' sole motivation was disinterested malevolence."  Id. at 333.

Plaintiff has set forth zero evidence that the Defendants intentionally inflicted any harm upon her without excuse or justification.  Nor has she provided any evidence of special damages. Sadowy v. Sony Corp. of Am., 496 F. Supp. 1071, 1075 (S.D.N.Y. 1980).  Thus, summary judgment should be granted and Plaintiff's claim for *prima facie* tort should be dismissed.

## CONCLUSION

Based on the foregoing, Defendants' motion for summary judgment to dismiss Plaintiff's

Complaint should be granted in its entirety.

**SAIBER LLC**
Attorneys for Defendants
Waterfront Commission of New York Harbor, Scott
Politano, John Hennelly, and Kristen Brylinski


By:____/s/ Melissa A. Provost_____
         WILLIAM F. MADERER
         MELISSA A. PROVOST

Dated: August 27, 2012